IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

```
                                :
COACH, INC. et al.,             :     HONORABLE JEROME B. SIMANDLE
                                :
              Plaintiffs,       :
                                :     Civil Action
         v.                     :     No. 10-2555 (JBS-JS)
                                :
BAGS & ACCESSORIES, et al.,     :
                                :     OPINION
              Defendants.       :
```

APPEARANCES:

Christine A. Shaw, Esq.
Marshall D. Bilder, Esq.
Michael L. Rosenberg, Esq.
STERNS & WEINROTH, PC
50 West State St.
Trenton, NJ 08607
       Counsel for Plaintiffs

**SIMANDLE**, District Judge:

This matter comes before the Court on Plaintiffs Coach, Inc. and Coach Services, Inc.'s ("Coach") motion for default judgment [Docket Item 12] as against Defendants Bags & Accessories and Naman Rafi ("Defendants"). For the reasons expressed below, the Court will grant Plaintiffs' motion.

I.   **BACKGROUND**

     A.   **Facts**[1]

     Coach is a manufacturer and distributor of luxury fashion accessories. Coach sells its goods through its own specialty

---

[1]The facts recited herein are derived from the Plaintiffs' supporting declaration, including private investigator Stuart Drobny and Coach's Counsel for Intellectual Property Tiffany Walden, and documents attached thereto.

retail stores, department stores, catalogs, and via the Internet
at www.coach.com.  Coach owns a number of trademarks, trade
dresses, and design elements/copyrights that it uses on its
products.

Based on information obtained from a private investigator
and Coach staff, Coach alleges that Defendants Bags & Accessories
and registered owner Naman Rafi have sold counterfeit Coach items
at the store located at 1307 Boardwalk, Atlantic City, New
Jersey.  (Compl. ¶ 28A; Drobny Decl. ¶¶ 3-4.)  For example,
Defendants sold a $6.00 imitation of a $68.00 Coach scarf that
bore multiple Coach trademarks and copyrighted design elements.
(Compl. ¶ 28B,C.)  Neither Bags & Accessories nor Naman Rafi have
been given permission to use the Coach trademarks.  (Walden Decl.
¶ 13; Compl. ¶ 30.)

Plaintiffs served Defendant Bags & Accessories and Defendant
Naman Rafi with a copy of the summons and complaint on May 25,
2010. [Docket Items 7 & 8.]  Coach alleges that Defendants have
engaged in selling counterfeit goods knowingly and intentionally
for the purpose of trading on the reputation of Coach and that
Defendants will continue to do so unless otherwise restrained.
(Compl. ¶¶ 31, 33.)

**B.   Procedure**

On May 18, 2010, the Plaintiffs filed a ten-count Complaint
against Defendants and ten John Does presenting claims of

2

trademark counterfeiting (15 U.S.C. § 1114), trademark infringement (15 U.S.C. § 1114), trade dress infringement (15 U.S.C. § 1125(a)), false designation of origin and false advertising (15 U.S.C. § 1125(a)), trademark dilution (15 U.S.C. § 1125(c)), copyright infringement (17 U.S.C. §§ 501-513), trafficking in counterfeit trademarks (N.J. Stat. Ann. § 56:3-13.16), unfair competition (N.J. Stat. Ann. §§ 56:4-1), common law trademark infringement, and unjust enrichment. The Defendants were properly served on May 25, 2010, but have failed to respond. On July 22, 2010, Coach filed a request for default, which the Clerk of Court entered pursuant to Rule 55(a), Fed. R. Civ. P., on the same day. Coach now moves the Court to enter a default judgment against Defendants and seeks a permanent injunction, statutory damages, and an award of attorney fees, investigator fees, and costs.

## II.  DISCUSSION

Fed. R. Civ. P. 55(b)(2) authorizes the entry of a default judgment against a party that has defaulted. However, default judgment is not a right. The decision about whether default judgment is proper is primarily within the discretion of the district court. Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).

## A.    Standard of Review

Once a party has defaulted, the consequence is that "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." DIRECTV, Inc. v. Pepe, 431 F.3d 162, 165 n.6 (3d Cir. 2005) (quoting Comdyne I, Inc. v. Corbin, 908 F.2d 1142, 1149 (3d Cir. 1990)).  Entry of default judgment where damages are not a sum certain requires an application to the Court to prove, inter alia, damages.  Fed. R. Civ. P. 55(b)(2); Comdyne, 908 F.2d at 1149.  In addition, liability is not established by default alone.  D.B. v. Bloom, 896 F. Supp. 166, 170 n.2 (D.N.J. 1995) (citing 10 C. Wright, A. Miller & M. Kane, Federal Practice and Procedure, § 2681 (2d ed. 1983)).  The Court must determine whether a sufficient cause of action was stated, Chanel, Inc. v. Gordashevsky, 558 F. Supp. 2d 532, 535 (D.N.J. 2008), and whether default judgment is proper. Chamberlain v. Giampapa, 210 F.3d 154, 164 (3d Cir. 2000).

## B.    Sufficiency of Causes of Action

In the present case, after being properly served on May 25, 2010, the Defendants failed to appear or otherwise defend, and the Clerk of the Court entered a default.  Therefore, the first issue is whether the Plaintiffs have stated a sufficient cause of action.  As will be explained below, the Court determines that Coach has established Defendants' liability for the purposes of this default judgment motion.

4

1.  <u>Federal Claims</u>

In their Complaint, Plaintiffs have asserted six federal claims against the Defendants: trademark counterfeiting (15 U.S.C. § 1114(1)(a)); trademark infringement (15 U.S.C. § 1114(1)(a)); trade dress infringement (15 U.S.C. § 1125(a)); false designation of origin and false advertising (15 U.S.C. § 1125(a)(1)(A)); trademark dilution (15 U.S.C. § 1125(c)); and copyright infringement (17 U.S.C. §§ 501-513).  Each was stated sufficiently to establish liability based on federal law.

**a.  Trademark Infringement (15 U.S.C. § 1114(1)(a)) and False Designation (15 U.S.C. § 1125(a)(1)(A))**

Trademark infringement (Count II) and false designation (Count IV) are measured by identical standards.  <u>A & H Swimwear, Inc. v. Victoria's Secret Stores, Inc.</u>, 237 F.3d 198, 210 (3d Cir. 2000).  The record must show: (1) the plaintiff has a valid and legally protectable mark, (2) the plaintiff owns the mark, and (3) the defendant's use of the mark causes a likelihood of confusion.  <u>Id.</u>

The first two elements are satisfied by registration and ownership of the relevant trademarks.  (Compl. ¶¶ 14-15.)  The third element is also satisfied.  In the Complaint (Compl. ¶¶ 44-45) and through exhibits, (<u>e.g.</u> Drobny Decl., Ex. A) the record has uncontested assertions and evidence that are sufficient to show a likelihood of confusion between the counterfeit scarves

5

and genuine Coach product.  Specifically, the photographs of the
scarf purchased by the investigator on April 8, 2010, clearly
show a reproduction of the Coach Op Art registered trademark.
(Drobny Decl. Ex. A; Compl. Ex. A.)  Further, it is reasonable to
believe that some consumers would be confused by these
counterfeit products.  See Coach, Inc. v. Cellular Planet, Civ.
No. 09-00241, 2010 WL 1853424, at *1, *4 (S.D. Ohio, May 7, 2010)
(holding that although the counterfeit items could be
distinguished from genuine Coach items because they were being
sold out of a trunk of a car, the counterfeit nature of the
products meant they were inherently likely to cause confusion).
Therefore, a cause of action for trade infringement and false
designation has been sufficiently established.

### b.    Trademark Counterfeiting (15 U.S.C. § 1114(1)(a))

To establish trademark counterfeiting (Count I) the record
must show (1) the defendant infringed a registered trademark in
violation of the Lanham Act, 15 U.S.C. § 1114(1)(a) and (2) the
defendant intentionally used the trademark knowing it was
counterfeit or was willfully blind to such use.  Chanel v.
Gordashevsky, 558 F. Supp. 2d at 537.  "The only distinction
between the standard for federal trademark counterfeiting and the
standard for establishing infringement is that to obtain treble
or statutory damages for a counterfeiting claim, a plaintiff must
show that the defendant intentionally used the plaintiff's

6

trademark, knowing that it was a counterfeit." Id. at 536-537.
The Third Circuit has stated that "willful" infringement
"involves an intent to infringe or a deliberate disregard of a
mark holder's rights." Securacomm Consulting Inc. v. Securacom
Incorporated, 166 F.3d 182, 187 (3d Cir. 1999) superseded by
statute on other grounds as recognized by Banjo Buddies, Inc. v.
Renosky, 399 F.3d 182, 187 (3d Cir. 1999).  Such willful conduct
can be shown through "deliberate and unnecessary duplicating of a
plaintiff's mark . . . in a way that was calculated to
appropriate or otherwise benefit from the good will the plaintiff
had nurtured." Id. quoting W.E. Bassett Co. v. Revlon, Inc., 435
F.2d 656, 662 (2d Cir. 1970) (internal punctuation omitted).

     Here, both elements of trademark counterfeiting are met.  It
has already been established that Defendants infringed Coach's Op
Art trademark.  In addition, Coach alleges that Defendants'
infringement and counterfeiting was willful and intentional.
(Compl. ¶ 31.)  Coach has also alleged, and the Court must now
accept as true, that "products bearing the Coach Marks are widely
recognized and exclusively associated by consumers, the public,
and the trade as being high quality products sourced from Coach."
(Compl. ¶ 13.)  Such well-known brands "are often imitated in
order to profit from the company's reputation for high-end
products." Coach, Inc. v Cosmetic House, Civ. No. 10-2794, 2011
WL 1211390 at * 4 (D.N.J., March 29, 2011).  The Court infers

from the sale of the infringing scarf bearing the unmistakable
Coach logo that the counterfeiting here meets the Third Circuit
standard of willfulness.  Therefore, a cause of action for
trademark counterfeiting has been sufficiently established.

### c. Trade Dress Infringement (15 U.S.C. § 1125(a))

To establish trade dress infringement (Count III), a
plaintiff must show: (1) the allegedly infringing design is non-
functional, (2) the design is inherently distinctive or has
acquired secondary meaning, and (3) consumers are likely to
confuse the source of the plaintiff's product with that of the
defendant's product.  <u>McNeil Nutritionals, LLC v. Heartland
Sweeteners, LLC</u>, 511 F.3d 350, 357 (3d Cir. 2007).

Each of these elements was alleged in the Complaint, (Compl.
¶¶ 52-56) and was not contested.  The Court is therefore
satisfied that the Plaintiffs have a meritorious claim for trade
dress infringement based on the non-functional nature of the
infringement, the distinctiveness of the Coach elements, and the
likelihood of confusion.

### d. Trademark Dilution (15 U.S.C. § 1125(c))

Plaintiffs also sufficiently allege facts as to Claim V.  To
establish trademark dilution under the Lanham Act a plaintiff
must prove:

> (1) the plaintiff is the owner of a mark that
> qualifies as a 'famous' mark in light of the
> totality of eight factors listed in § 1125(c)(1);

> (2) the defendant is making commercial use in
> interstate commerce of a mark or trade name; (3)
> defendant's use began after the plaintiff's mark
> became famous; and (4) defendant's use causes
> dilution by lessening the capacity of the
> plaintiff's mark to identify and distinguish goods
> or services.

Times Mirror Magazine, Inc. v. Las Vegas Sports News, LLC, 212 F.3d 157, 163 (3d Cir. 2000); 800-JR-Cigar, Inc. v. GoTo.com, Inc., 437 F. Supp. 2d 273, 293 (D.N.J. 2006).

As set forth in the Complaint, Plaintiffs have sufficiently alleged facts supporting the first and fourth elements; that the relevant Coach marks are "famous" and Defendants' actions lessen the capacity of such marks to identify and distinguish Coach products. (Compl. ¶¶ 67-69.) The interstate nature of the commerce and the timing of the Defendants' use of the mark are not perfectly clear from the record. Private investigator Stuart Drobny, employed by a Pennsylvania investigative firm, purchased a scarf at Defendants' store (Drobny Decl. ¶¶ 2, 4), which is evidence that the Defendants' infringing goods have traveled in interstate commerce. More importantly, the quantum of commercial activity needed to demonstrate interstate commerce is not great; even in a criminal case, interstate commerce is satisfied by the mere fact that a contraband article, such as a firearm, was manufactured outside the state in which it was found when it was possessed. 18 U.S.C. § 922(g); See United States v. Gatlin, 613 F.3d 374, 380 (3d Cir. 2010) (finding evidence that weapon

traveled in interstate commerce from, <u>inter alia</u>, fact that weapon was seized in Delaware, "and no handguns have been manufactured in Delaware in nearly 100 years."). The location of Defendants' store on the Boardwalk in Atlantic City--a main destination for interstate travelers--also suggests that a substantial part of Defendants' customers will have traveled interstate before and after making their purchases of the infringing items. Consequently, there is evidence to support the Court's conclusion that the Defendants are involved interstate commerce.

Regarding the fourth element, that Defendants' use began after the mark became famous, given that Coach's trademarks have been in existence for several decades, the Court concludes that Defendants' use began after the mark in question became famous. Consequently, the Court will accept that these elements are satisfied and a cause of action for trademark dilution has been established.

### e. Copyright Infringement (17 U.S.C. §§ 501-513)

To establish copyright infringement pursuant to 17 U.S.C. §§ 501-513, a plaintiff must prove (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. <u>Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.</u>, 499 U.S. 340, 361 (1991); <u>Dam Things from Denmark v. Russ Berrie & Co., Inc.</u>, 290 F.3d 548, 561 (3d Cir. 2002). The

copying element can be proven by showing that the defendant had access to the work and there are substantial similarities between the two works.  Dam Things, 290 F.3d at 561.  Both elements have been sufficiently asserted to state a cause of action for copyright infringement.  (Compl. ¶¶ 75-78.)  Specifically, Coach has alleged that it has a valid copyright in the "Op Art" design (Compl. Ex. A) and "Legacy Stripe" design (Compl. Ex. B), which Plaintiffs allege were both copied on the scarf purchased by Plaintiffs' investigator.  (Compl. ¶ 77.)  Therefore, a cause of action for copyright infringement has been established.

### 2.  State Claims

In their Complaint Plaintiffs have also asserted four state law claims: trademark counterfeiting (N.J. Stat. Ann. § 56:3-13.16); unfair competition (N.J. Stat. Ann. §§ 56:4-1, 56:4-2); common law trademark infringement; and unjust enrichment.  The state common law claims were sufficiently stated, and because federal liability has already been established, state statutory liability is also met.

### a.  State Statutory Claims

N.J. Stat. Ann. § 56:3-13.16 provides civil liability against a person who engages in trafficking of counterfeit marks and N.J. Stat. Ann. § 56:4-2 provides civil liability against a person who appropriates trademarks.  These state law claims are similar to the federal Lanham Act claims, and this Court has

11

found liability under federal law to be sufficient to establish liability under state law. See Axelrod v. Heyburn, Civ. No. 09-5627, 2010 WL 1816245, at *3 (D.N.J. May 3, 2010); Zinn v. Seruga, Civ. No. 05-3572, 2009 WL 3128353, at *27-*28 (D.N.J. Sept. 28, 2009); N.V.E., Inc. v. Day, Civ. No. 07-4283, 2009 WL 2526744, at *2 (D.N.J. Aug. 18, 2009). Therefore, because Plaintiffs have sufficiently stated their federal claims for trademark counterfeiting, the Plaintiffs have also stated a claim for trademark counterfeiting under N.J. Stat. Ann. § 56:3-13.16 and unfair competition under N.J. Stat. Ann. §§ 56:4-1, 56:4-2.

**b.    Common Law Trademark Infringement**

The Plaintiffs have also stated a claim for common law trademark infringement. (Compl. ¶¶ 95-99.) As with the state statutory claims, liability for common law trademark infringement is established when a defendant violates the federal Lanham Act for trademark infringement. Coach, Inc. v. Cosmetic House, Civ. No. 10-2794, 2011 WL 1211390 at * 5 (D.N.J., March 29, 2011); Major League Baseball Promotion Corp. v. Colour-Tex, Inc., 729 F. Supp. 1035, 1039-40 (D.N.J. 1990). Therefore, the Court finds that Plaintiffs have sufficiently stated a claim for common law trademark infringement.

**c.    Unjust Enrichment**

Finally, the Plaintiffs have stated a claim under New Jersey common law for unjust enrichment. (Compl. ¶ 104.) Here the

12

Defendants were profiting from counterfeit items based on Coach's reputation.  It would be unjust for the Defendants to enrich themselves without compensating the Plaintiffs, so a cause of action for unjust enrichment has been established.  See Howard Johnson Int'l, Inc. v. Vraj Brig, LLC, Civ. No. 08-1466, 2010 WL 215381, at * 9 (D.N.J. Jan. 14, 2010) (citing Kopin v. Orange Prod.s, Inc., 297 N.J. Super. 353, 366-68 (N.J. Super. Ct. App. Div. 1997)).

In sum, each count of the Complaint stated a sufficient cause of action that is supported  by evidence in the record.  The Court now turns to whether default judgment is proper.

**C.   Default Judgment**

"Before imposing the extreme sanction of default [judgment], district courts must make explicit factual findings as to (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default."  Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds, 250 F.R.D. 171, 177 (D.N.J. 2008) (citing Emcasco Ins. Co. v. Sambrick, 834 F.2d 71, 74 (3d Cir. 1987)).

The current record does not show any meritorious defenses.  Because the Defendants did not respond, the Court cannot determine whether the Defendants had meritorious defenses that are not reflected in the record.  The Court therefore finds that

13

Defendants have no meritorious defense.  The Court also finds that Plaintiffs have been prejudiced by the Defendants' failure to answer because they have been prevented from prosecuting their case, engaging in discovery, and seeking relief in the normal fashion.  Defendants were properly served, yet failed to appear or defend themselves in any fashion.  It has been nearly a year since Defendants were served, and Defendants have failed to contact the Court or the Plaintiffs.  This shows the Defendants' culpability in their default.  See Platypus Wear, 2009 WL 2147843 at *5.  Thus, the Court finds that Plaintiffs are entitled to default judgment against Defendants Bags & Accessories and Naman Rafi.

**D.   Remedies**

      1.   <u>Lanham Act Statutory Damages</u>

The Lanham Act provides that a plaintiff can elect to recover either actual damages based on the defendant's profits and the plaintiff's damages (15 U.S.C. § 1117(a)) or statutory damages (15 U.S.C. § 1117(c)).  The Plaintiffs have elected to recover statutory damages.  (Pls.' Br. in Supp. Mot. for Default J. and Permanent Inj., 9.)  As discussed below, after considering past awards in this District, the point of sale, the extent of sales, and the lack of evidence concerning Plaintiffs' losses, the Court will award $80,000 in statutory damages for Defendants' Lanham Act violations.

14

For statutory damages under the Lanham Act, the plaintiff may recover "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1)). If the use of the counterfeit mark was willful, the maximum increases to $2,000,000 per mark per type of good. 15 U.S.C. § 1117(c)(2). As stated above, for use to be willful, a defendant must show an "aura of indifference to plaintiff's rights" or a "deliberate and unnecessary duplicating of a plaintiff's mark . . . in a way that was calculated to appropriate or otherwise benefit from the good will the plaintiff had nurtured." SecuraComm, 166 F.3d at 187.

"In the absence of clear guidelines for setting a statutory damage award, courts have tended to use their wide discretion to compensate plaintiffs, as well as to deter and punish defendants, often borrowing from factors considered for statutory damages in copyright infringement." Louis Vuitton Malletier & Oakley, Inc. v. Veit, 211 F. Supp. 2d 567, 583-84 (E.D. Pa. 2002) (citing cases showing wide range of statutory damages awarded by district courts). Because statutory damages are meant to serve as a substitute for actual damages the Court should discern whether the requested damages "bear some relation to the actual damages suffered." Bly v. Banbury Books, Inc., 638 F. Supp. 983, 987 (E.D. Pa. 1986); see also Gucci Am. V. Duty Free Apparel, Ltd.,

315 F. Supp. 2d 511, 520 (S.D.N.Y. 2004) ("To the extent possible, statutory damages 'should be woven out of the same bolt of cloth as actual damages.'") (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 14.04[E][1], at 14-69 (2003.))

To assess whether the request is appropriate, the Court may be guided by past statutory damage awards.  See Louis Vuitton Malletier, S.A. v. Mosseri, No. 07-2620, 2009 WL 3633882, at *3 (D.N.J. Oct. 28, 2009); N.V.E., 2009 WL 2526744, at *3-*4; Veit, 211 F. Supp. 2d at 583-84.  In a recent survey, See Coach Inc. v. Ocean Point Gifts, Civ. No. 09-4215, 2010 WL 2521444 at * 6-7 (D.N.J. June 14, 2010), this Court determined that statutory damage awards for Lanham Act violations in this District are influenced in part by the point of sale of the infringing goods, specifically in cases of counterfeit goods sold on the Internet, and influenced in part on the monetary value of the item counterfeited.  In the Ocean Point Gifts case, the Court, guided by Platypus Wear, 2009 WL 2147843, awarded $10,000 per counterfeit mark per type of good sold.  Ocean Point Gifts at * 7.  The Court concluded that, because "the counterfeit products at issue were not widely distributed via the Internet" the damage award should not be as high as Internet-distribution cases of luxury goods cited by Plaintiffs, such as Luis Vuitton Malletier, S.A. v. Mosseri, 211 F. Supp. 2d at * 3.  For substantially the

same reasoning as in <u>Ocean Point Gifts</u>, the Court will again apply an award of $10,000 per counterfeit mark per type of good sold.

In the instant case, four types of goods were sold by the Defendant that carried counterfeit Coach marks: handbags, wallets, scarves, and hats.  (Drobny Decl. ¶ 4.)  Two Coach trademarks were infringed: "Coach Op Art" (Registration No. 3,696,470) and "Coach Stylized" (Registration No. 3,338,048).  Plaintiffs also claim, in their brief, that a third trademark was infringed: the "Legacy Stripe."  (Pls.' Br., 10.)  However, the Court observes that Plaintiffs adduce no record of any "legacy stripe" trademark registration, and the Complaint lists the "legacy stripe" as a registered copyright rather than a trademark.  (Compl. Ex. B.)  The Lanham Act does not provide statutory damages for infringement of copyrights.  <u>See</u> 15 U.S.C. § 1117(c) (limiting statutory damages for use of "counterfeit mark," defined as those "registered on the principal register in the United States Patent and Trademark Office" in § 1116(d)(1)(B)).  Consequently, the Court will assess the appropriate statutory damage award for Defendants' copyright violation <u>infra</u>, but the Court will award statutory damages for Defendants' Lanham Act infringement of only two of Plaintiffs' marks.

Because there are four types of goods and two marks, the statutory damage amount must be not less than $8,000 or more than $16,000,000.  The Plaintiffs have requested one hundred times the minimum statutory damages, $100,000 per mark per good for a total of $800,000.[2]

As in the <u>Ocean Point Gifts</u> case, the Court will again follow the approach of <u>Platypus Wear</u> and award $10,000 per infringement for $80,000 total, ten times the minimum statutory damages.  2009 WL 2147843, at * 7.  This amount is within the guidelines established by Congress, takes into account Defendants' culpability, and is significant enough to serve as compensation to the Plaintiffs and a deterrent to both the Defendant and others.  This award also acknowledges that the sales took place at a small shop on the boardwalk rather than the Internet.  Plaintiffs have produced some evidence of the scale of Defendants' operations, which included "approximately 35 handbags, 30-40 wallets, 25 scarves and 5 hats, all of varying designs," which the Court assumes to mean, as the Complaint alleges, infringing and counterfeited items bearing false Coach trademarks.  (Drobny Decl. ¶ 4.)

---

[2] Plaintiffs' full statutory damage request of $1,200,000 was based on a damage award for three counterfeit marks rather than two.

2.   <u>Copyright Statutory Damages</u>

In addition to statutory damages under the Lanham Act, Plaintiffs also seek statutory damages for Defendants' copyright violations.  (Compl. ¶ G.)  While Plaintiffs' brief discusses only Lanham Act damages, based on the understanding that infringement of all three designs would be recoverable under the Lanham Act and that double recovery for the same infringement under the Copyright Act is prohibited.  (Pls.' Br. at 12.) However, the Court has determined that Plaintiffs are not entitled to recover statutory damages under the Lanham Act for Defendants' duplication of the copyrighted (but not trademarked) "Legacy Stripe" design.  While the Court cannot award statutory damages under the Copyright Act and the Lanham Act for identical wrongs, <u>see</u> <u>Cosmetic House</u>, 2011 WL 1211390 at * 7, there is no such bar to recovery under separate statutory schemes for separate acts of infringement.  <u>Mon Cheri Bridals, Inc. v. Wen Wu</u>, 383 F. App'x 228, 240 (3d Cir. 2010) (affirming separate awards under Lanham Act and Copyright Act that "reflect harm suffered under separate statutory schemes for separate facts").  Consequently, the Court will also award statutory damages for Defendants' infringement of Plaintiffs' copyrighted "Legacy Stripe" design.

The Copyright Act provides that "the copyright owner may elect, at any time before final judgment is rendered, to recover,

instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). In the case of willful infringement, as here, the maximum damage award is $150,000 per act of infringement. 17 U.S.C. § 504(c)(2). As with statutory damages under the Lanham Act, "[a] party need not prove actual damages to be entitled to an award of statutory damages." Axact (PVT), Ltd. v. Student Network Resources, Inc., Civ. No. 07-5491, 2008 WL 4754907 at * 2 (D.N.J., Oct. 22, 2008) (citing Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 996 (9th Cir. 1998)). The standard used by courts to determine the appropriate statutory damages under the Copyright Act are the same as under the Lanham Act. Veit, 211 F. Supp. 2d at 583-84. Consequently, for the same reasons discussed in the Lanham Act context, the Court determines that an award of $10,000 statutory damages for violation of Plaintiffs' copyrighted design is appropriate in this context.

### 3.   Costs and Attorney Fees

In addition to statutory damages, Coach asks for both attorney fees and costs, which their evidence shows to be $4,794.35 for attorney fees, $250.00 for investigative fees, and $409.95 for costs.

The costs of actions brought under § 43(a), § 43(d), or a willful violation under § 43(c) of the Lanham Act (codified at 15 U.S.C. § 1117(a), (d), & (c), respectively) can be recovered pursuant to § 35(a) (codified at 15 U.S.C. § 1117(a)).  In "exceptional cases" the court may award reasonable attorney fees. 15 U.S.C. § 1117(a).  "Exceptional" has been interpreted by the Court to mean involving culpable conduct.  Securacomm, 224 F.3d at 280.  Because this case involved the culpable conduct of Defendants, attorney fees and costs will be awarded to the Plaintiffs.[3]  See Louis Vuitton v. Mosseri, 2009 WL 3633882, at *4; Chanel v. Gordashevsky, 558 F. Supp. 2d at 539.

Attorneys fees can includes fees for investigators working under the direction of an attorney.  Chanel v. Gordashevsky, 558 F. Supp. 2d at 539 (citing Louis Vuitton S.A. v. Downtown Luggage Ctr., 706 F. Supp. 839, 842 (S.D. Fla. 1988).  Thus, in this case the fees that the Plaintiffs have paid to the investigative firm can be included in damages.

### 4.   Permanent Injunction

Coach also seeks the equitable relief of a permanent injunction to enjoin the Defendants from infringing Coach's

---

[3] In their brief, Plaintiffs request $2,821.50 in attorney fees (Pls.' Br. 14) but Mr. Rosenberg, counsel for Plaintiffs, reports $5,204.30 in attorney fees in a supporting declaration. (Rosenberg Decl. ¶ 7.)  The attached invoice from Sterns & Weinroth, however, (Rosenberg Decl. Ex. C) provides an accounting of attorney fees at $4,794.35.  The Court will award what is shown on the Sterns & Weinroth invoice, which it finds to be reasonable and necessary in scope of services provided and in fees charged.

trademarks.  This request is consistent with 15 U.S.C. § 1116(a).
The Supreme Court requires that any plaintiff seeking a permanent
injunction to show:

> (1) that it has suffered an irreparable injury; (2)
> that remedies available at law, such as monetary
> damages, are inadequate to compensate for that
> injury; (3) that, considering the balance of
> hardships between the plaintiff and defendant, a
> remedy in equity is warranted; and (4) that the
> public interest would not be disserved by a
> permanent injunction.

eBay, Inc. v. MercExchange, LLC, 547 U.S. 388, 391 (2006)
(citations omitted).

### a.   Irreparable Injury

The Third Circuit has explicitly stated that "once the
likelihood of confusion caused by trademark infringement has been
established, the inescapable conclusion is that there was also
irreparable injury."  Pappan Enter.s, Inc. v. Hardee's Food
Sys.s, Inc., 143 F.3d 800, 805 (3d Cir. 1998) (quoting Opticians
Ass'n of Am. v. Indep. Opticians of Am., 920 F.2d 187, 1976 (3d
Cir. 1990).  Thus, because a likelihood of confusion has been
shown, the requirement of irreparable harm has been met.

### b.   Inadequacy of Remedies at Law

While a remedy at law would provide a degree of monetary
relief, it will not compensate for the injury to Coach's
reputation or necessarily prevent future trademark infringement.
Louis Vuitton v. Mosseri, 2009 WL 3633882 at *5; See also Audi AG
v. D'Amato, 469 F.3d 534, 550 (6th Cir. 2006) (stating when there

is potential for future harm there is no adequate remedy at law).
A remedy at law would be inadequate to compensate Coach.

### c.    Balancing of Hardships

The only hardship imposed upon the Defendants is that they
obey the law.  On the other hand if an injunction were not issued
then Coach suffers the hardships that gave rise to this suit:
loss of reputation and sales.  Louis Vuitton v. Mosseri, 2009 WL
3633882 at *5 (citing Microsoft Corp. v. McGee, 490 F. Supp. 2d
874, 882-83 (S.D. Ohio 2007).

### d.    Public Interest

The Third Circuit has recognized that the public interest
weigh in favor of trademark enforcement because "there is a
public interest in the protection of the trademark and to avoid
confusion in the public."  Bill Blass, Ltd. v. SAZ Corp., 751
F.2d 152, 156 (3d Cir. 1984) (cited in Opticians Ass'n, 920 F.2d
at 197).  Issuing an injunction will serve the public interest
goals of preventing consumer confusion and the trademark holder's
property interest.  Microsoft, 490 F. Supp. 2d at 883.  Here the
public interest is served by issuing an injunction.

Because each of the eBay requirements have been met by
Coach, the Court will grant Coach the relief it seeks by
enjoining Defendants Bags & Accessories and Naman Rafi from
infringing Coach's trademarks and copyrights.  Bags & Accessories

must also surrender the infringing products for destruction by
freight prepaid to Coach.

In sum, the Court will grant $80,000 in statutory damages
under the Lanham Act, $10,000 in statutory damages under the
Copyright Act, and $5,454.30 in attorney fees and litigation
costs, bringing Plaintiffs' total recovery from Defendants to
$95,454.30.  In addition, the Court will permanently enjoin Bags
& Accessories and Naman Rafi from infringing Coach's trademarks
and copyrights in the future and require them to surrender to
Coach all infringing products they currently possess.


## III. CONCLUSION

For the foregoing reasons the Court will grant the
Plaintiffs' motion for default judgment, award a default judgment
of $95,454.30, and issue a permanent injunction.  The
accompanying order for default judgment and permanent injunction
shall be entered.


 **May 17, 2011**                        **s/ Jerome B. Simandle**
Date                                     JEROME B. SIMANDLE
                                         United States District Judge


24